**Ernestine HAWKINS, Plaintiff**

v.

**REGION'S d/b/a Region's Bank, Defendant.**

**Civil Action No. 2:11cv49–M–S.**

United States District Court, N.D. Mississippi, Delta Division.

May 16, 2013.

Ja'Nekia W.M. Barton, Leontra Monique Mayes, W. Ellis Pittman, Pittman Law Office, PLLC, Clarksdale, MS, for Plaintiff.

Benjamin M. Watson, Richard McLure Dye, Butler, Snow, O'Mara, Stevens & Cannada, Jackson, MS, for Defendant.

## ORDER

MICHAEL P. MILLS, Chief Judge.

This cause comes before the court on the motion of defendant Regions Bank to compel arbitration, pursuant to the Federal Arbitration Act. See 9 U.S.C. § 1, *et seq.* Plaintiff Ernestine Hawkins has responded in opposition to the motion, and the court, having considered the memoranda and submissions of the parties, concludes that the motion is well taken and should be granted.

The instant motion involves the arbitrability of a tort action involving injuries allegedly suffered by plaintiff in March 2008, when she tripped and fell in a Regions bank in Sumner, Mississippi. In seeking to compel arbitration of this dispute, Regions relies upon an AmSouth Bank agreement signed by plaintiff in 2005,[1] which provides for arbitration of "any controversy, claim, counterclaim, dispute or disagreement between you and us." Based upon this provision, Regions argues that:

> Clearly, Hawkins' lawsuit in which she claims that she fell while leaving a Regions branch in the course of an account transaction represents a "controversy" and a "dispute." Accordingly, this dispute is within the scope of the arbitration agreement that Hawkins agreed to.

Of immediate concern for this court is not the ultimate question of arbitrability, but, rather, the threshold question of who should *decide* arbitrability. This is because the AmSouth agreement also contains a "delegation" clause which requires the question of arbitrability to be submitted to an arbitrator.

Significantly, the U.S. Supreme Court recently gave a very pro-arbitration interpretation of delegation clauses in *Rent-A-*

---

1. Regions is the successor-in-interest of Am-      South Bank.

*Center v. Jackson,* 561 U.S. 63, 130 S.Ct. 2772, 2778, 177 L.Ed.2d 403 (2010). In *Jackson,* the Supreme Court found that the plaintiff had failed to challenge the validity of an arbitration agreement which contained both a general agreement to arbitrate disputes and also a delegation clause. *Jackson,* 130 S.Ct. at 2777. Specifically, the Court found that the plaintiff had only "challenged . . . the validity of the contract as a whole" rather than the validity of the delegation clause. *Id.* at 2779. The Supreme Court reasoned that because the delegation clause was severable from the contract, it was unaffected by the contract's validity; thus, in accordance with the valid delegation clause, questions of arbitrability (including the arbitrability of the overall agreement to arbitrate) must go to an arbitrator. *Id.* at 2778–79. While the holding in *Jackson* leaves a number of unanswered questions, it appears to place a heavy burden on plaintiffs to make challenges which are tailored specifically to arbitration *delegation* clauses within contracts, rather than to the contract as a whole or even to arbitration clauses within those contracts.

Regions argues that, based on *Jackson,* any questions of arbitrability in this case should be submitted to the arbitrator, based on the following delegation provision:

> [a]ny dispute regarding whether a particular controversy is subject to arbitration, including any claim of unconscionability and any dispute over the scope or validity of this agreement to arbitrate disputes or of this entire [customer] Agreement, shall be decided by the arbitrator(s).

Recognizing the broad scope of this delegation provision, plaintiff argues that her AmSouth account had been closed at the time of her accident and that her agreement with AmSouth—in its entirety—is

inapplicable to this case. In light of *Jackson,* it does not appear that this is an appropriate argument for plaintiff to make to this court (as opposed to the arbitrator), since it relates to the contract as a whole, and not merely to the delegation clause. Indeed, plaintiff makes it emphatically clear in her brief that she alleges that the AmSouth agreement as a whole was "superseded by the terms and conditions of [plaintiff's new bank], thereby voiding this agreement in its entirety." In light of *Jackson,* the court finds this to be an argument appropriately directed to the arbitrator.

Without addressing the merits of the argument, the court notes that Regions makes it clear that it has a substantive defense to plaintiff's argument that the AmSouth agreement was not in effect at the time of the accident. That is, Regions argues that the AmSouth agreement includes a provision which allows the arbitration provision to survive the closing of an account:

> Hawkins closed her AmSouth Account on September 5, 2006. However, the AmSouth Customer Agreement provides that "[t]his agreement to arbitrate disputes shall survive the closing of your account and shall also survive as to any Claim covered within the scope of this Agreement." Therefore, the closing of the account has no bearing on Hawkins' obligation to arbitrate.

Regions also notes that plaintiff signed an additional consumer agreement with another of its predecessors-in-interest (Union Planters) which, it contends, also applies to this case and constitutes an additional basis for arbitration.

Plaintiff responds that the Union Planters agreement (which she refers to as the "Regions" agreement) has a more limited delegation provision than the AmSouth one. While appearing to acknowledge this

point, defendant notes that the Union Planters agreement requires that disputes regarding the "scope or enforceability of this Agreement" be arbitrated. Regions argues that this provision applies here since the essential dispute regarding arbitrability in this case is whether the arbitration provision's scope encompasses tort claims related to the customer agreement.

Without addressing the merits of the parties' arguments, the court concludes that Regions has made a sufficient showing to require this court to stay this action and allow the arbitrator to decide the question of arbitrability. The court would emphasize that this is *all* it is doing at this juncture: referring a ruling on the question of arbitrability to the arbitrator, without expressing an opinion about the merits of the arguments for or against arbitration. Plaintiff will still be able to make her argument that the AmSouth agreement was not in effect at the time of her injury; she will simply have to make that argument to the arbitrator. If the arbitrator agrees with plaintiff's argument in this regard, then he/she will presumably address Region's "backup" argument that the arbitration provision in the Union Planters agreement applies and requires the arbitration of plaintiff's claims. If the arbitrator rejects that argument as well, then he/she will presumably decline to arbitrate the tort dispute, the stay of this case will be lifted and litigation will resume in this court.

The court recognizes that the Supreme Court's decision in *Jackson* might be regarded by some as creating a legal "black hole" which inevitably sucks in disputes and sends them to arbitration (at least in cases involving a delegation clause). If this is true, then the fact nevertheless remains that this court has no choice but to follow this law. The U.S. Supreme Court has, in recent years, adopted an approach which highly favors arbitration, including overturning the decisions of state supreme courts when it finds that they have established laws which are contrary to the pro-arbitration policies behind the FAA. *See, e.g. AT & T Mobility LLC v. Concepcion,* —— U.S. ——, 131 S.Ct. 1740, 1745, 179 L.Ed.2d 742 (2011) (overturning California Supreme Court holding placing restrictions on companies' ability to limit class arbitrations).

While it can be argued that decisions such as *Jackson* serve to consign broad areas of litigation to arbitration, this seems to have been precisely the Supreme Court's intent. Indeed, the Supreme Court has made no secret of the fact that it interprets the FAA as broadly favoring the arbitration of disputes. Indeed, it must be conceded that the FAA itself seems designed to "nudge" district courts into submitting questions to arbitrators, such as by making orders denying arbitration immediately appealable, while generally denying such appeals in cases where district courts allow arbitration. *See, e.g.* 9 U.S.C. § 16(b)(1); *Apache Bohai Corp. v. Texaco China, B.V.,* 330 F.3d 307 (5th Cir.2003); *Mire v. Full Spectrum Lending Inc.,* 389 F.3d 163 (5th Cir.2004) (holding that, under the FAA, orders granting arbitration and issuing stays are not appealable). This court's experience has been that, once rulings denying arbitration are appealed to the Fifth Circuit, that court has tended to resolve any "gray areas" in favor of arbitrability. Therefore, this court has considerable doubt that it would be able to fashion any ruling denying arbitration in such a manner as to avoid the numerous legal obstacles which exist to same, particularly post-*Jackson*. Accordingly, any ruling denying arbitration would likely result only in an expensive and time-consuming appellate detour which would

not leave the parties any closer to resolving the ultimate tort dispute in this case.

The court acknowledges that—particularly since *Jackson*—the deck seems to be heavily stacked in favor of submitting issues to arbitrators, at least in federal court. However, it would also hasten to add that, in its experience, arbitrators tend to be either former judges or experienced attorneys who do not check their sense of fairness and responsibility at the door when they become arbitrators. In submitting the question of arbitrability to an arbitrator, this court fully expects the arbitrator who considers this question to do so in a completely fair and impartial manner. The court also notes that, while many plaintiffs seem to regard arbitration as the place where "lawsuits go to die," at least one empirical study of consumer arbitrations conducted by the American Arbitration Association found, among other things, that "[c]onsumers won some relief in 53.3% of the cases they filed and recovered an average of $19,255." *An Empirical Study of AAA Consumer Arbitrations,* Ohio State Journal on Dispute Resolution, 25 OHSJDR 843 (2010). Accordingly, even if the arbitrator should conclude that the tort dispute in this case must be arbitrated, the court fully expects that he will do so in a fair and impartial manner.

In light of the foregoing, it is ordered that Regions' motion for arbitration [14–1] is granted. This case is hereby stayed pursuant to 9 U.S.C. § 3, pending a ruling on arbitrability from the arbitrator. If the arbitrator should conclude that the instant case is not arbitrable, then the stay will be lifted and litigation will resume in this court.